# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| RONALD SILVEY, | ) | CASE NO. 3:09CV2722 |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| JESSE WILLIAMS, Warden, | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| RESPONDENT. | ) | |
| | ) | |

Before the Court is the Report and Recommendation ("R&R") of Magistrate Judge George J. Limbert, recommending that the habeas petition be denied and the case dismissed. (Doc. No. 9.) Respondent filed objections (Doc. No. 10), to which petitioner filed a response (Doc. No. 13). Petitioner also filed separate objections (Doc. No. 15), but respondent filed no response. Respondent did file notice of supplemental authority. (Doc. No. 16.) The Court has conducted its *de novo* review of the matters raised in the objections. Fed. R. Civ. P. 72(b)(3). For the reasons set forth below, the R&R is accepted (with one exception), and this matter is dismissed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following facts which "shall be presumed to be correct[,]" unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

{¶ 2} On October 7, 2004, appellant was indicted and charged with two counts of rape in violation of R.C. 2907.02(A)(l)(b), a first degree felony, and two counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A) and (8)(3), a third degree felony. The offenses occurred between September 2003 and June 2004.

1

{¶ 3} At trial, the state called C.H., the alleged victim to testify. At the time of trial, she was 14 years old, but at the time of the alleged offenses in September 2003 through June 2004, she was 12 and 13 years old. Appellant was C.H's [sic] mother's live-in boyfriend. C.H. testified that appellant was like a father to her and that, other than the times of the offenses, she enjoyed spending time with him.

{¶ 4} C.H. testified that the first incident occurred when she was lying fully clothed in her mother's bed next to appellant. Appellant "rubbed on" C.H.'s vagina and breasts. A few days later, while C.H. was in her sister's bedroom, appellant came in and told C.H. to take off her pants. Appellant then had vaginal sexual intercourse with C.H. for the first time. C.H. testified that "it hurt" and that appellant told her to keep it a secret.

{¶ 5} C.H. testified that appellant engaged in vaginal sexual intercourse with her on more than five additional occasions. She also testified that appellant put his penis in her mouth on two occasions.

{¶ 6} The first person C.H. told about these incidents was an acquaintance, S.P., who happened to be the daughter of one of appellant's ex-girlfriends. C.H. also testified that S.P.'s mother told C.H.'s mother about C.H.'s allegations. Shortly thereafter, C.H.'s mother first questioned C.H. about the allegations in the presence of appellant. Fearing appellant because he was "yelling at" her, at that time C.H. denied that the incidents took place.

{¶ 7} The final incident took place on C.H.'s last day of school in June. Appellant picked up C.H. at a friend's house to take her home. C.H. recalled that appellant was driving his blue van. C.H. testified that while appellant was driving he told C.H. to pull down her pants. Appellant put his finger in her vagina.

{¶ 8} C.H. testified that after this last incident, she told her best friend, C.K., and her friend's mother, Janice K., about the incidents. C.H. testified that Janice K. advised her to tell her grandmother. Janice K. also listened in on a phone call that C.H. made to appellant. C.H. testified that during this phone call, appellant said that if C.H. told anyone about their sexual relationship, that he would just tell them C.H. was lying. He also reminded C.H. that it was supposed to be a secret.

{¶ 9} Following Janice K.'s advice, C.H. told her grandmother about the incidents. In turn, the grandmother told C.H.'s mother.

{¶ 10} The state's second witness was Janice K. Corroborating C.H's testimony, Janice K. testified that the victim told her that she had a sexual relationship with appellant. Janice K. also testified regarding the conversation

2

between C.H. and appellant that she heard on a very loud cordless phone. Janice K. testified that during that conversation, she heard appellant say to C.H. that since she had made the allegations before and recanted, nobody was going to believe C.H. Janice K. further testified that appellant also stated to C.H. that the sexual relationship was their secret and C.H. was not supposed to tell anyone.

{¶ 11} Janice K. testified that she lived just two houses away from C.H. and her mother and that she would often see C.H. with appellant. Janice K. testified that she observed appellant chase, grab, and hug C.H. At one point, Janice K. testified that in her opinion, appellant looked at C.H. "like a hungry man looking at a pork chop rather than a man looking at a child." The trial court sustained defense counsel's objection to this comment. On cross-examination, Janice K. admitted that despite her feelings that appellant's relationship with C.H. was not appropriate, she had allowed her own minor daughter, C.K., to spend the night at C.H.'s house once or twice while appellant was in the home.

{¶ 12} Next, the state called Cassandra V., C.H.'s mother. She testified that C.H. has attention deficit hyperactivity disorder for which C.H. has taken medication and has seen a counselor. Cassandra V. also admitted that C.H. had lied in the past about things unrelated to these incidents. However, by the time allegations of the incidents between appellant and C.H. were raised again by C.H.'s grandmother, Cassandra V. believed C.H.'s allegations and made a gynecological appointment for C.H.

{¶ 13} The certified nurse midwife who examined C.H. in June 2004, testified that C.H's hymen was not intact. However, on cross-examination, the nurse admitted that a hymen can be in that condition from causes other than sexual intercourse.

{¶ 14} The state concluded its case and at appellant's counsel's request, a bench discussion was held regarding the proposed testimony of Jodie H., a friend of appellant. Appellant's counsel proposed that Jodie H. was to testify both as an alibi witness and a rebuttal witness with regard to the June 2004 incident C.H. claimed occurred in appellant's van. Explaining the untimeliness of the notice of the alibi witness, appellant's counsel informed the trial court that Jodie H. had come forward with this information just two days before trial. The state argued that the untimely notice was "unduly prejudicial" to its case and requested exclusion of any testimony from the witness. The trial court ruled that the rebuttal testimony (that the van was inoperable on the day in question), but not the alibi testimony (that appellant was with Jodie H. on the day in question) would be allowed.

{¶ 15} While on the stand, Jodie H. testified that her recollection was that appellant's van was not operable on the date in June 2004, that C.H. claims she was assaulted while appellant was driving it.

{¶ 16} Appellant also called his friend, Brent P. to testify. Brent P. testified that he is currently incarcerated for receiving stolen property. He testified that in the past, he had worked on appellant's blue van. He testified that the van ceased to be operable by May 2004. Brent P. also testified that he was part of a conversation with Cassandra V. and C.H. after appellant's arrest. During that conversation about the events leading up to appellant's arrest, Brent P. testified that Cassandra V. had to keep reminding C.H. about the dates and details surrounding C.H.'s disclosures.

{¶ 17} After closing arguments and jury deliberation, the jury returned guilty verdicts on all counts.

{¶ 18} At the sentencing hearing, the trial court ordered that appellant serve eight years as to the two counts of rape, and four years as to the two counts of unlawful sexual conduct with a minor. These sentences were ordered to be served consecutively for a total of 24 years of incarceration.

(Return of Writ ("Return"), Ex. 13, Doc. No. 6-2 at 73-77.)

On August 3, 2005, represented by counsel,[1] Silvey appealed from the conviction and sentence. In his brief on the merits, he assigned the following errors:

I.      The convictions were against the manifest weight of the evidence, due to the lack of credible witnesses who were no corroborated.

II.     The trial court erred on a number of evidentiary rulings, including the exclusion of alibi evidence. The trial court abused its discretion in making these rulings, which were highly prejudicial to Silvey and impacted his ability to have a fair trial.

III.    Silvey's sentence, which involved sentences that were not the shortest available, and imposed consecutively to each other, was unconstitutionally imposed.

(Return, Ex. 11, Doc. No. 6-2 at 25.)

---

[1] The notice of appeal was filed on petitioner's behalf by his original trial counsel. (Return, Ex. 8.) However, about two weeks later, new appointed counsel filed a motion for leave to amend notice. (Return, Ex. 9.) It was the latter who actually prosecuted petitioner's direct appeal.

On May 25, 2007, the State court of appeals affirmed the trial court's judgment of conviction, but reversed and remanded for resentencing based on *State v. Foster*, 109 Ohio St. 3d 1 (2006). (Return, Ex. 13, Doc. No. 6-2 at 72.)

On June 26, 2007, Silvey filed a pro se notice of appeal to the Ohio Supreme Court. (Return, Ex. 14, Doc. No. 6-2 at 92.) In his memorandum in support of jurisdiction, he raised two propositions of law:

I.  The appellant's guilty verdicts were against the manifest weight of the evidence and the sufficiency of the evidence presented at trial.

II. The trial court erred in various evidentiary rulings by allowing evidence that was either inadmissible or prejudicial to be admitted which unfairly impacted the appellant's rights to a fair trial.

(*Id*., Ex. 15, Doc. No. 6-2 at 95.) The Ohio Supreme Court dismissed the appeal on October 3, 2007, as not involving any substantial constitutional question. (*Id*., Ex. 17, Doc. No. 6-2 at 150.)

While Silvey was pursuing his direct appeal, he also filed a pro se sentencing memorandum in support of minimum and concurrent terms. (Return, Ex. 18, Doc. No. 6-2 at 151.) On September 6, 2007, the trial court resentenced Silvey to 8 years for each count of rape and 4 years for each count of unlawful sexual conduct with a minor, all to be served consecutively. (*Id*., Ex. 19, Doc. No. 6-2 at 173.)

Petitioner, represented by the attorney who had represented him on direct appeal and at his resentencing, filed a notice of appeal (Return, Ex. 20, Doc. No. 6-2 at 175), and raised one assignment of error: "The trial court violated Silvey's constitutional rights by imposing a sentence for the rape that was not the shortest authorized, and by imposing consecutive sentences. (*Id*., Ex. 21, Doc. No. 6-2 at 181.) On March 31, 2008, the Sixth District Court of Appeals affirmed Silvey's sentence. (*Id*., Ex. 23, Doc. No. 6-2 at 196.)

5

On June 10, 2009, Silvey filed his pro se notice of appeal to the Ohio Supreme Court (Return, Ex. 24, Doc. No. 6-2 at 201), along with a motion for delayed appeal. (*Id.*, Ex. 25, Doc. No. 6-2 at 203.) On July 29, 2009, the Ohio Supreme Court denied the motion and dismissed the appeal. (*Id.*, Ex. 26, Doc. No. 6-2 at 211.)

Proceeding pro se, on August 22, 2007, Silvey also filed an application to reopen his appeal under Ohio App. R. 26(B), raising the following assignment of error:

> The appellant was denied the effective assistance of appellate counsel when 1) appellate counsel failed to obtain a copy of the trial transcript on appellant's behalf during the course of his direct appeal, 2) failed to raise the ineffective assistance of trial counsel for A) failing to have the trial transcript establish that the prosecutor was pointing at the appellant when he stated twice that no one had taken the stand to deny what the alleged victim claimed, B) trial counsel never objected to the testimony of a layperson which formed opinions well beyond her education and training, C) trial counsel never asked for the appointment of an expert witness, and D) trial counsel failed to timely file a notice of alibi thereby causing the trial court to exclude the alibi witnesses testimony that clearly established that the alleged victim was lying.

(Return, Ex. 27, Doc. No. 6-2 at 213.) On September 14, 2007, the court of appeals denied the application to reopen. (*Id.*, Ex. 29, Doc. No. 6-2 at 246.)

Acting pro se, on October 23, 2007, Silvey filed a notice of appeal to the Ohio Supreme Court (Return, Ex. 30, Doc. No. 6-2 at 252) and raised the following proposition of law:

> Appellant was denied the effective assistance of appellate counsel when 1) appellate counsel failed to obtain a copy of the trial transcript on appellant's behalf during the course of his direct appeal, 2) failed to raise the ineffective assistance of trial counsel for A) failing to have the trial transcript establish that the prosecutor was pointing at the appellant when he stated twice that no one had taken the stand to deny what the alleged victim claimed, B) trial counsel never objected to the testimony of a layperson which formed opinions well beyond her education and training, C) trial counsel never asked for the appointment of an expert witness, and D) trial counsel failed to timely file a notice of alibi thereby causing the trial court to exclude the alibi witnesses testimony that clearly established that the alleged victim was lying.

(*Id*., Ex. 31, Doc. No. 6-2 at 255.) On December 12, 2007, the Ohio Supreme Court dismissed

the appeal as not involving any substantial constitutional question. (*Id*., Ex. 33, Doc. No. 6-2 at

293.)

On November 8, 2009, Silvey filed the instant pro se petition for writ of habeas

corpus. (Doc. No. 1.) He asserted four grounds for relief:

1.   Petitioner's right to a fair trial and due process were violated by the trial
     court refusing to grant a mistrial when the prosecutor directly commented
     on petitioner's failure to testify.

     [Supporting Facts: During closing arguments, the prosecutor repeatedly
     pointed at petitioner stating to the jury that "Not one person has taken the
     stand and said this did not happen. Not one." and "... look at the testimony
     you didn't hear. No one took the stand and said this isn't true." Following
     objection, the trial court refused to order a mistrial and would not even
     offer a curative instruction.]

2.   Petitioner was deprived of due process and compulsory process by
     exclusion of his alibi witness by the trial court.

     [Supporting Facts: Petitioner's alibi witness had been recalcitrant and only
     agreed to testify on the first day of trial. Despite no showing of prejudice
     from the prosecutor and the acknowledgement [sic] of a lack of bad faith
     by the defense, the trial court used a state rule to deprive petitioner of this
     witness and the exclusion of such exculpatory evidence.]

3.   Petitioner was deprived of effective counsel at trial and on appeal.

     [Supporting Facts: Appointed appellate counsel failed to present an
     argument on appeal regarding trial counsel's failure to timely file a notice
     of alibi which resulted in petitioner's wrongful conviction because the trial
     court disallowed the testimony due to lack of timely notice. Trial counsel
     affected the trial, appellate counsel should have argued this on appeal,
     adversely affecting appeal.]

4.   Petitioner was deprived of due process of law as well notice and
     opportunity to be heard and trial by jury by the excession [sic] of the
     statutory maximum sentence on resentencing after remand.

     [Supporting Facts: Petitioner's unlawful sentence was reversed on initial
     direct appeal. The resentencing served to exceed the statutory maximum
     sentence of three years concurrent; based on the ex post facto effect of a
     court decision issued subsequent to the date the alleged conduct occurred

7

giving rise to the sentence, which purports to expand the statutory maximum sentence, into a "sentencing range" and octuple the actual maximum permissible sentence of three years concurrent.]

## II. DISCUSSION

**A.**     **Standard of Review**

Under Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." This *de novo* review requires the Court to apply the provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA") and the cases construing the amendments.

Title 28, Section 2254(d) provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court explained these provisions as follows:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

8

*Id*. at 412-13.

This Court, however, may not consider "contentions of federal law which are not resolved on the merits in the state proceeding due to petitioner's failure to raise them as required by state procedure." *Wainright v. Sykes*, 433 U.S. 72, 87 (1977). If a "state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) (citations omitted).

If a petitioner asserts ineffective assistance of counsel as cause for a default, that ineffective assistance claim must itself be presented to the state courts as an independent claim before it may be used to establish cause. *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). If the ineffective assistance claim is not presented to the state courts in the manner that state law requires, that claim is itself procedurally defaulted and can only be used as cause for the underlying defaulted claim if the petitioner demonstrates cause and prejudice with respect to the ineffective assistance claim. *Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000).

## B.     The R&R

The R&R recommends that the Court dismiss Silvey's petition in its entirety with prejudice. In response to the parties' respective arguments in the petition, return, and traverse, the Magistrate Judge concluded:

(1)     Ground One (deprivation of fair trial and due process when trial court refused to grant a mistrial after prosecutor commented on his failure to testify) has no merit under the test set forth in *Webb v. Mitchell*, 586 F.3d 383, 396 (6th Cir. 2009);

(2)     Ground Two (deprivation of due process and compulsory process by exclusion of alibi witness) is not procedurally defaulted, but has no merit because, unless Silvey "can[ ] show that the trial court improperly interpreted [the] state law [regarding alibi-notice procedure], his effort to claim a *federal* constitutional violation on the basis of this alleged misinterpretation of state law does not get off the ground." (Doc. No. 9 at 27-28 (quoting *Bell v. Jackson*, 379 F.App'x 440, 447-48 (6th Cir. 2010) (italics in original));

(3)     Ground Three (insofar as it raises a claim of ineffective assistance of trial counsel) is procedurally defaulted;

(4)     Ground Three (insofar as it raises a claim of ineffective assistance of appellate counsel) lacks merit; and

(5)     Ground Four (deprivation of due process and notice and opportunity to be heard when trial court exceeded the statutory maximum sentence) is procedurally defaulted.

**C.     Analysis of Objections to the R&R**

**1.     Respondent's Objection (Doc. No. 10)**

Respondent objects only to the R&R's conclusion that Ground Two is not procedurally defaulted.[2]

Respondent asserts that the R&R correctly concludes that Silvey's second ground was not fairly presented to the Ohio appellate court at the first opportunity on direct review and that it could no longer be fairly presented now under Ohio's doctrine of *res judicata*. Respondent objects to the R&R's "fail[ure] to afford the correct ramification from this default, by finding 'the second prong of *Maupin* [*v. Smith*, 785 F.2d 135 (6th Cir. 1986),] however, is not satisfied'

---

[2] This objection is made only "to preserve the issue if needed on appeal[ ]" (Doc. No. 10 at 6),  since the R&R goes on to recommend denial of Ground Two on the merits, to which respondent does not object.

10

because '[t]he Supreme Court of Ohio did not explicitly invoke *res judicata*.' " (Objection, Doc. No. 10 at 1.)[3]

In *Williams v. Anderson*, 460 F.3d 789 (6th Cir. 2006), the court discussed the two ways that a claim can be procedurally defaulted for purposes of federal habeas review:

> … First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986). If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted. *Id.*

> Second, a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848-7, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. at 731-2, 111 S.Ct. 2546. This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28, 102 S.Ct. 1558. Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.* In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised on direct appeal, the claim is procedurally defaulted. *Id.*

*Id*. at 806.

---

[3] "When a state argues that a habeas claim is precluded by the petitioner's failure to observe a state procedural rule, the federal court must go through a complicated analysis. *See generally* L. Yackle, *Post-Conviction Remedies* § 84 (Supp. 1985). First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. * * * Second, the court must decide whether the state courts actually enforced the state procedural sanction. * * * Third, the court must decide whether the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim. * * * Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was 'cause' for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error." *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Respondent argues that the R&R's conclusion that Ground Two is not procedurally defaulted "fails to acknowledge the[se] two types of procedural defaults" (Doc. No. 10, at 1) and improperly applies a *Maupin* analysis to a situation where it should not be applied. Respondent points out that Silvey did not present this claim on direct appeal as a federal constitutional claim, but only as a challenge to the application of state law relating to notice of alibi testimony. It was raised for the first time as a federal constitutional issue only in his discretionary appeal to the Ohio Supreme Court. (*Compare*, Return, Ex. 11, Doc. No. 6-2 at 34-35, *with* Return, Ex. 15, Doc. No. 6-2 at 104-106.)

Fair presentation requires that a claim be presented at the first available opportunity. "The general rule in the federal habeas context is that the submission of new claims to a state's highest court on discretionary review does not constitute fair presentation of the claims to the state courts." *Skinner v. McLemore*, No. 08-1353, 2011 WL 2192632, at *2 (6th Cir. June 7, 2011) (citing *Castille v. Peoples*, 489 U.S. 346, 349 (1989)).

In his opposition to respondent's objection, petitioner relies on *Franklin v. Rose*, 811 F.2d 322 (6th Cir. 1987) for the following:

> In *Daye v. Attorney General*, 696 F.2d 186 (2d Cir. 1982), *after remand*, 712 F.2d 1566 (1983), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723, 29 L.Ed.2d 84 (1984), the Second Circuit addressed exhaustion where the petitioner had asserted in state court that he was denied a "fair trial:"

>> The greatest difficulty arises when in the state court the petitioner has described his claim in very broad terms, such as denial of a "fair trial." * * * Obviously, not every event in a criminal proceeding that might be described as "unfair" would be a violation of the defendant's rights under the Constitution. * * * In order to determine, therefore, whether a claim that the defendant has been denied a "fair trial" involves a constitutional claim, one must look to the factual allegations supporting the claim.

> * * *

12

> [T]he ways in which a state defendant may fairly present to the
> state courts the constitutional nature of his claim, even without
> citing chapter and verse of the Constitution, include (a) reliance on
> pertinent federal cases employing constitutional analysis, (b)
> reliance on state cases *employing constitutional analysis in like
> fact situations,* (c) assertion of the claim in terms so particular as to
> call to mind a specific right protected by the Constitution, and (d)
> allegation of a pattern of facts well within the mainstream of
> constitutional litigation. *Id.* at 193-94 (emphasis added) (citations
> omitted).

*Franklin*, 811 F.2d at 326 (citations omitted).

Petitioner relies on the quotation from *Daye* to argue that, since he cited *State v. Smith*, 17 Ohio St. 3d 98 (1985), in his brief to the Ohio court of appeals (Return, Ex. 11, Doc. No. 6-2 at 35), he "fairly presented" his constitutional claim to the state courts. *Smith*, according to petitioner, "analyzes the impact of Ohio Criminal Rule 12.1 in relation to the Sixth Amendment's right to Compulsory Process, citing numerous federal cases discussing the issue as a federal constitutional right as opposed to a matter of state law." (Doc. No. 13 at 2.)

However, the court in *Franklin*, notwithstanding *Daye*, concluded that the petitioner had not fairly presented the substance of his constitutional arguments to the state courts. It found that fair presentation

> required more than the use of a generalized catch-all phrase which merely alleged
> the deprivation of a fair trial under the United States Constitution. Such a catch-all
> provision does not adequately apprise the state courts of the constitutional theory
> to be relied upon at appellate review, especially under circumstances where the
> only legal theory presented to the state courts was predicated entirely upon state
> evidentiary law.

*Franklin*, 811 F.2d at 326.

Franklin was convicted in Tennessee for rape, armed robbery, felonious assault, and illegal possession of a sawed-off shotgun. He appealed his convictions raising several

13

assignments of error, including one that asserted that "[t]he court erred in refusing to allow the medical record of Central State Hospital to be admitted into evidence." 811 F.2d at 323. The Court of Appeals summarized the proceedings below as follows:

The *entire* discussion in Franklin's brief referencing this "error" stated:

> Appellant substantially complied with the principles set out in *Graham v. State*, 547 S.W.2d 531 (Tenn. 1974 [sic]); and the diagnoses made by Doctors Nash and Luton, that Mr. Franklin suffered from schizophrenia whoudl [sic] have been admitted. (Tr. 569.70).

The Court of Criminal Appeals affirmed Franklin's convictions and addressed his assignment of error concerning the hospital records as follows:

> Moreover, we find no reversible error in the trial court's decision[ ] ... to prohibit the introduction of hospital records for which no proper foundation had been laid, as required by *Graham v. State*, *supra*.

Franklin thereafter filed a timely Application for Permission to Appeal in the Tennessee Supreme Court. The application provided, in pertinent part:

> QUESTIONS FOR REVIEW
> Your Applicant, in seeking review of his case, is asking this Honorable Court to exercise its supervisory power to insure that the Courts of this State afford fairness and justice to defendants in criminal trials, and for cause would show as follows:
>
> That the Court of Criminal Appeals erred in not granting a reversal of the Criminal Court's conviction, or, in the alternative, a new trial based on the following errors of the Criminal Court, *which errors, individually, and if considered as a group, effectively denied Defendant of his right to a fair trial as guaranteed to him under the United States Constitution and the Constitution of the State of Tennessee*.[2] (emphasis added)
>
> [2] Franklin's counsel in oral argument before this court on appeal termed these two paragraphs as an "overlay" provision which applied to all of the enumerated assignments of error that sufficiently implicated issues of constitutional magnitude that invoked the jurisdiction of the federal courts.
>
> * * *

14

(13) Whether the Court erred in refusing to allow the medical records of Central State Hospital to be admitted into evidence.

The entire discussion in the application on this issue stated:

The Court erred in refusing to allow the medical record of the Central State Hospital to be admitted into evidence. Defendant substantially complied with the principles set out in *Graham v. State*, 547 S.W.2d 531 (Tenn., 1974 [sic] ). Defendant was prejudiced because he could not present evidence in his own behalf. Doctors Nash and Luton of Central State made diagnoses that Mr. Franklin suffered from schizophrenia. (Tr. 659-70).

The Tennessee Supreme Court refused permission to appeal.

811 F.2d at 323 (all changes in original).

Similar to *Franklin*, petitioner presented a very vague argument to the state court, an argument that can hardly be characterized as raising any constitutional issue. Silvey's entire argument on this issue before the state appellate court was as follows:

"Crim. R. 12.1 should be construed liberally and not be applied where no prejudice would accrue to the prosecution, where there is a demonstrable and excusable showing of mere negligence, or where there is good cause shown." *State v. Smith* (1985), 17 Ohio St.3d 98. This is not a situation where a witness, for the first time on the stand, offers an alibi. Nor, is there any evidence that the defense was acting disingenuously in trying to avoid the notice requirements. The state had a full day's notice, and an explanation was [sic] to why this witness had previously been recalcitrant. Therefore, the exclusion of the evidence was an error. *State v. Smith* (1977), 50 Ohio St.2d 51, 55. ("Furthermore, any incidental element of surprise which the excluded testimony might have contained could have been remedied without prejudice to either party had the trial court granted [a] request for a brief continuance to allow the prosecution additional discovery time.") Given Silvey vigorously contested the charges against him, and that two specific dates were offered by the prosecution, an alibi should have not surprised the state unduly.

(Return, Ex. 11, Doc. No. 6-2 at 35.) Although he argues here that he cited a state case which addressed compulsory process, his citation to that case is merely for its interpretation of a state criminal rule. That is not sufficient to put the state court on notice that he is raising a

15

constitutional issue. In fact, nothing in the argument made to the state appellate court comes even

close to suggesting a constitutional issue.

The argument made to the Ohio Supreme Court was no better; but for the mere

mention of the constitution, it could barely be characterized as a constitutional argument. There

Silvey made the exact same argument quoted above and then added:

> The United States Supreme Court has upheld that action in a case where defense counsel's conduct was labeled "a blatant and willful violation of the discovery rules", *Taylor v. Illinois*, 484 U.S. 400, 416 (1988). The Supreme Court acknowledged the remedy is a drastic one but would allow it where a party's failure to comply with a discovery order constitutes a willful omission designed "to obtain a tactical advantage, *Taylor v. Illinois*, 484. U.S. 400, 108 S.Ct. 646, 648 (1966).

> Wherefore, in this matter it is clearly established that the prosecutor didn't think Trial Counsel had withheld the testimony of Jodi Harsh to gain some kind of a tactic, and had not acted in bad faith", Trial Tr. 299-300. So it becomes legally and constitutionally established that the Appellant was indeed denied the constitutional right to present defense evidence in the form of alibi testimony as the direct result of the Trial Court's ruling excluding that evidence from being presented at trial, Trial Tr. 301.

(Return, Ex. 15, Doc. No. 6-2 at 106.) Even if the Supreme Court of Ohio could have recognized

this argument as a constitutional challenge, it would have been without jurisdiction to consider it

because it had not been raised in the same form before the court of appeals. It is an established

rule of long standing in Ohio that a criminal constitutional question cannot be raised in the Ohio

Supreme Court unless it was presented and argued in the court below. *State v. Phillips*, 27 Ohio

St. 2d 294 (1971). Although the Ohio Supreme Court, in rejecting the appeal as not involving

any substantial constitutional question, did not specifically cite to this precedent, the Sixth

Circuit has instructed that courts should assume that the state court "would not have ignored its

own procedural rules and would have enforced the procedural bar." *Simpson v. Sparkman*, 94

F.3d 199, 203 (6th Cir. 1996).

16

In light of the above, the Court sustains respondent's objection to the R&R's conclusion that Ground Two is not procedurally defaulted. Silvey failed to present his constitutional claim relating to alibi witnesses to the state courts at the first available opportunity and is now no longer able to do so. Therefore, Ground Two is procedurally defaulted and cannot be considered by this Court absent a showing "that cause and prejudice will excuse the procedural default or that failure to consider that claim will result in a fundamental miscarriage of justice." *Id*. Petitioner has advanced both a cause and prejudice argument and an actual innocence argument in the context of Ground Three, which is considered below in the discussion of the Magistrate Judge's recommendation regarding the claim of ineffective assistance of appellate counsel.

### 2. Petitioner's Objections (Doc. No. 15)

#### a. First Objection

Petitioner's first objection is a reiteration of his opposition to respondent's objection. In particular, petitioner argues that it was error for the R&R to conclude that he "did not present his compulsory process issue regarding his alibi witness as a constitutional claim in state court." (Doc. No. 15, at 2.) Petitioner insists that he did fairly present to the state courts his claim that the denial of his alibi witness was a constitutional violation.

The Court has already discussed this issue in the context of respondent's objection and, therefore, overrules petitioner's first objection.

#### b. Second and Seventh Objections

These two objections are related and will be discussed together because the legal reasoning overlaps.

17

Petitioner's second objection is that the R&R errs "in the determination that [he] did not demonstrate the ineffectiveness of appellate counsel sufficiently to overcome the procedural default attendent [sic] to his ineffective trial counsel claim. (R&R at 17-19)." (Doc. No. 15 at 2.) The portion of the R&R objected to by petitioner is within the discussion of procedural default as it relates to that part of Ground Three which asserts that trial counsel gave ineffective assistance by failing to timely file a notice of alibi.

For his seventh objection, petitioner asserts that the R&R's "Merit conclusions on the ineffective counsel issue are erroneous." He claims that he "has completely demonstrated the ineffectiveness of both trial and appellate counsel[.]"(Doc. No. 15 at 10.)

In the Return of Writ, the respondent argues that any claim of ineffective assistance of *trial* counsel is procedurally defaulted because it was not raised on direct appeal, as required by Ohio law, and cannot be salvaged by a belated attempt to bootstrap it to the claim of ineffectiveness of *appellate* counsel raised in the application to reopen. *See Greer v. Mitchell*, 264 F.3d 663, 674 (6th Cir. 2001) (citing *State v. Cole*, 2 Ohio St. 3d 112 (1982) Syllabus).

Petitioner concedes that his direct appeal did not raise the issue of trial counsel's ineffectiveness as it related to alibi and is, therefore, procedurally defaulted. Nevertheless, he also asserts in Ground Three that the cause of this default was the ineffectiveness of his *appellate* counsel and that he was prejudiced thereby because his unlawful conviction was upheld.

The R&R concluded that "[a]ppellate counsel's choice to forego [the] claim [of ineffectiveness of trial counsel due to his failure to file a timely notice of alibi] did not constitute deficient performance." (Doc. No. 9 at 17.) The Magistrate Judge reasoned that, since the alibi witness came forward just two days before trial (Return, Ex. 13, Doc. No. 6-2 at 76, ¶ 14) and Ohio's Crim. R. 12.1 requires a defendant to provide seven days' notice of intent to claim alibi, it

18

cannot be said that trial counsel's actions were not reasonable. (Doc. No. 9 at 18, citing *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).) The R&R points out that petitioner has not demonstrated that a reasonable trial attorney would have acted differently nor that a reasonable attorney would have uncovered the alibi on an independent investigation early enough to file a timely notice under Ohio's rule. Although petitioner contends that the alibi witness originally refused to testify, he makes that assertion without any evidentiary support. In addition, petitioner fails to demonstrate from the record when trial counsel first became aware of the witness and the potential alibi. Therefore, the R&R concludes: "Where, as here, the circumstances surrounding counsel's challenged conduct are unknown to the Court, Petitioner's claim must fail." (Doc. No. 9 at 18.)

Since appellate counsel is not required to raise every possible issue on direct appeal, *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983); *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002), "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986). Since petitioner has not demonstrated that trial counsel's actions with respect to the notice of alibi were unreasonable, it is not ineffective assistance for *appellate* counsel to forego that issue on appeal. Therefore, petitioner has failed to establish that *appellate* counsel's ineffectiveness was cause for the procedural default of his claim of *trial* counsel's ineffectiveness.

In addition, as the state appellate court pointed out, although the witness was not permitted to testify that petitioner was with her on the day that he was accused of sexually assaulting the victim (i.e., not permitted to testify as an alibi witness), the witness was permitted to testify that the van where the sexual assault allegedly occurred on the drive home from school

19

was inoperable on the day in question. (Return, Ex. 13, Doc. No. 6-2 at 76, ¶ 14.) The jury apparently did not believe this testimony and there is no proof that it would have been any more believing of alibi testimony from this same witness. Therefore, even if petitioner had been able to establish cause for his default, he would be unable to establish any prejudice from trial counsel's failure to file a timely alibi notice or from appellate counsel's failure to raise ineffective assistance of trial counsel on appeal. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984) (to establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

In light of this discussion, petitioner cannot overcome the procedural default of his claim of ineffective assistance of trial counsel and cannot prevail on the merits of his claim of ineffective assistance of appellate counsel.

Petitioner's second and seventh objections are overruled.

### c.    Third Objection

Petitioner's third objection challenges as "unreasonable and erroneous" the R&R's assertion "that the alibi witness' testimony, being unsupported by affidavits, cannot establish actual innocence, (R&R at 19-20)." (Doc. No. 15 at 5.) He objects to the R&R's conclusion that he has failed to demonstrate actual innocence, as a narrow exception to his procedural bar, because he has presented no evidence to support his assertion that his alibi witness's testimony would have proven that he could not have committed two of the four crimes.

The R&R cites *Browning v. Howes*, No. 1:10-CV-28, 2010 WL 2010872, at * 1-2 (W.D. Mich. May 18, 2010) for the proposition that a claim that alibi testimony would establish actual innocence must be supported by "affidavits or other statements by … the alleged

20

witnesses." *See also Schulp v. Delo*, 513 U.S. 298, 324 (1995) (noting that a petitioner must provide "new reliable evidence" to support a claim of actual innocence). Petitioner argues that he should be afforded an evidentiary hearing because he is "unable to obtain the testimony of the witness[ ]" due to "poverty" and the "inability to hire a private detective or an attorney to search out, find and draft and have executed an affidavit[.]" (Doc. No. 15 at 5.)

The Court finds no merit in petitioner's objection. First, the alleged alibi evidence, if it exists, is not "new" evidence. The trial court was given the opportunity to admit the testimony of the alibi witness and refused to do so on state procedural grounds. As noted by the R&R, courts have routinely held that evidence that was available at the time of trial cannot be considered in ruling upon a claim of actual innocence. See R&R, Doc. No. 9 at 19 (citing cases). In addition, it is not credible that petitioner is unable to contact the proposed alibi witness, whom he identifies as a "long-time friend" (Return, Ex. 15, Doc. No. 6-2 at 105), to obtain her affidavit as to what her testimony would have been and whether she would have been willing to testify on petitioner's behalf as an alibi witness.

Petitioner's third objection is overruled.

**d.     Fourth Objection**

Petitioner opposes the R&R's conclusion that he has not demonstrated cause for the default associated with Ground Four. In Ground Four, petitioner alleges that his resentence was unlawful because it exceeded the statutory maximum sentence. He concedes that he was procedurally defaulted on this ground for failure to timely perfect a request for discretionary review by the Ohio Supreme Court. However, he alleges cause for this failure in that he never received notice from his counsel that his sentence had been affirmed on direct appeal following the resentencing.

21

The R&R concluded that petitioner's claim that he did not receive word of the appellate decision is completely unsupported by any evidence, unlike a similar claim in *Hartman v. Bagley*, 492 F.3d 347 (6th Cir. 2007), upon which petitioner relies. In *Hartman*, the case docket clearly showed that the appellate decision had been mailed only to the petitioner, not to his counsel. Hartman supplied the affidavit of a prison employee stating that no legal mail had been received for Hartman during the relevant period. The court of appeals determined that this established cause to excuse his default in failing to timely appeal the denial of his postconviction petition. The R&R in the instant case, however, notes that Silvey's case docket shows that the appellate decision was mailed to the attorneys of record (Return, Ex. 36, Doc. No. 6-2 at 325, entry for 3/31/09) and, under the common law mailbox rule, is presumed to have been received. (Doc. No. 9 at 22) (citing *Aetna Life Ins. Co. v. Montgomery*, 286 F. Supp. 2d 832, 839 (E.D. Mich. 2003); *In re Yoder Co.*, 758 F.2d 1114, 1118 (6th Cir. 1985) ("The common law has long recognized a presumption that an item properly mailed was received by the addressee."). Petitioner bears the burden of establishing that his counsel never received the document. *Id.* Petitioner failed to do so.

Petitioner challenges the R&R's presumption that the attorney received the appellate decision in the mail and forwarded it to petitioner. He asserts that he has offered sworn testimony by way of his petition that he did *not* receive the decision. He argues that the state "has provided absolutely no evidence, or argument, to rebut the sworn fact that Petitioner was never timely advised of the fact that his appeal had been decided by court or counsel." (Doc. No. 15 at 7.)

It is true that petitioner's habeas petition is signed under penalty of perjury as required by Rule 2(c)(5) of the Rules Governing Habeas Corpus Cases under § 2254. Under 28

U.S.C. § 1746, this renders his assertion that he never received a copy of the appellate decision affirming his resentencing sufficient from an evidentiary standpoint. Therefore, the Court will presume that he met his burden of showing cause for his untimely discretionary appeal after his resentencing. That said, however, he must also show that this resulted in prejudice.

Petitioner cannot meet this burden. To do so, he would be required to show that, had he been allowed to perfect his discretionary appeal to the Ohio Supreme Court, that court would have ordered him resentenced to the minimum sentence for his crimes. He cannot make this showing because the Ohio Supreme Court has rejected the ex post facto argument he advances. *See State v. Elmore*, 122 Ohio St. 3d 472 (2009) Syllabus ¶ 1 (resentencing pursuant to *Foster* "for offenses that occurred prior to February 27, 2006, does not violate the Sixth Amendment right to a jury trial or the Ex Post Facto or Due Process Clauses of the United States Constitution"). In *Elmore*, the Ohio Supreme Court specifically held that a trial court, upon resentencing under *Foster*, "has discretion to impose consecutive sentences and, despite the *Foster* severance of statutory presumptions, is not required by the rule of lenity to impose a minimum prison term." *Id.*, Syllabus ¶ 2.

Petitioner's argument that respondent's reliance on *Oregon v. Ice*, 555 U.S. 160 (2009) is misplaced also provides him no relief. In *Ice*, the Supreme Court declined to extend to the imposition of consecutive sentences for discrete crimes the line of decisions holding that a jury must determine any fact other than a prior conviction that increases the maximum punishment for an offense.[4] In *Ice*, the Court majority held that the Constitution does not preclude states from assigning to judges, rather than juries, the findings of fact necessary to impose consecutive, rather than concurrent, sentences for multiple offenses. 555 U.S. at 163-64.

---

[4] *See Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004).

Silvey argues that *Ice* does not apply because, unlike the State of Oregon, Ohio has no "common-law right for a trial court to impose consecutive sentences[.]" (Doc. No. 8 at 10.) This argument is simply incorrect. In *State v. Bates*, 118 Ohio St.3d 174 (2008), the Ohio Supreme Court "held that [after *Foster*,] common-law sentencing presumptions were … reinstated, giving trial judges 'the discretion and inherent authority to determine whether a prison sentence within the statutory range shall run consecutively or concurrently.' " *State v. Hodge*, 128 Ohio St. 3d 1, 4 (2010) (quoting *Bates*, ¶¶ 18-19).

Petitioner's fourth objection is overruled.

### e.  Fifth Objection

For his fifth objection, petitioner states: "The Magistrate's conclusion that the prosecutor pointing in Petitioner's face and stating to the jury that 'Not one person has taken the stand and said this did not happen. Not one!' and '... look at the testimony you didn't hear. No one took the stand and said this isn't true' as not 'intended to comment on [Petitioner's] silence' (R&R at 23-26) is clearly erroneous[.]" (Doc. No. 15 at 8.)

This objection relates to the R&R's conclusion on the merits with respect to Ground One. In that ground, petitioner contends that his rights to a fair trial and to due process were violated when the trial court refused to grant a mistrial due to prosecutorial misconduct during closing arguments. Relying on *Webb v. Mitchell*, 586 F.3d 383, 396 (6th Cir. 2009), the R&R concluded:

> Considering all of the [*Webb*] factors together[:] a weak showing, at best, of an improper statement; isolated and brief conduct; curative instructions; and evenly weighed evidence, the undersigned recommends that the Court determine that a full application of the *Webb* factors directs a finding that Ground One lacks merit.

24

(Doc. No. 9 at 26.)[5]

In this objection, petitioner contends that the R&R "relies upon the state court's assertion that the comments were based upon the relative strength of the state's case and affords it the presumption of correctness." (Doc. No. 15 at 8.)

In addressing Ground One and reaching the conclusion quoted above, the R&R does not "rely upon" anything from the state court opinion nor afford any part of that legal opinion a "presumption of correctness." Rather, the R&R fully analyzed whether the state court's conclusion involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. (Doc. No. 9 at 25, citing 28 U.S.C. § 2254(d)(1).)

The R&R addressed the first *Webb* requirement and, after examining the trial transcript, concluded that the transcript failed to "establish that the appellate court unreasonably concluded that the prosecutor's statements were not intentional." (*Id*.). The R&R also determined that, because there was testimony from a nurse midwife on cross-examination that could have been viewed as rebutting the victim's testimony, a jury would not naturally and normally interpret the prosecutor's remark to be a comment on the petitioner's failure to testify, but more a comment on the general strength of the evidence. The R&R also noted that the trial court had instructed the jury that it could not consider petitioner's failure to testify for any purpose.[6] Based on the first *Webb* factor alone, the R&R recommended dismissing Ground One. However, the

---

[5] In *Webb*, considering a claim that a prosecutor improperly commented on a petitioner's silence, the Sixth Circuit stated that "whether a prosecutor's comment violates the Fifth Amendment turns on content and context: (1) Did the prosecutor 'manifestly intend[ ]' to comment on the defendant's Fifth Amendment right or would a jury 'naturally and necessarily' interpret the remark that way; (2) was it an isolated occurrence or part of an extensive pattern; (3) how strong was the prosecution's other evidence and (4) did the judge give a curative instruction?" *Webb*, 586 F.3d at 396 (citing *Bowling v. Parker*, 344 F.3d 487, 514 (6th Cir. 2003)).

[6] In the petition, Silvey asserts that the trial court refused to "offer a curative instruction." (Doc. No. 1 at 6.) However, the trial court did properly instruct the jury that it could not consider petitioner's failure to testify. This is a sufficient instruction.

25

R&R also noted that, under the second *Webb* factor, the prosecutor's remarks were isolated and brief and, under the fourth factor, the trial judge did give a curative instructive. The R&R noted as to the third factor (the strength of the prosecutor's other evidence) that it weighed evenly since it mostly hinged upon the victim's credibility and the manner in which the prosecutor advocated her credibility.

The Court finds no error in the Magistrate Judge's reasoning or conclusion with respect to the merits of Ground One.

Petitioner's fifth objection is overruled.

**f.  Sixth Objection**

The sixth objection is that it was "clearly erroneous" for the R&R to conclude "that a compulsory process violation does not constitute a federal constitutional violation (R&R at 27-28)." (Doc. No. 15 at 9.)

Petitioner has misconstrued the R&R's conclusion. The Magistrate Judge inartfully stated that, as in *Bell v. Jackson*, 379 F. App'x 440 (6th Cir. 2010), "Petitioner has not demonstrated an error of state law or a federal constitutional violation." (Doc. No. 9 at 28.) That conclusion must be read in the context of the R&R's quotation of *Bell*. *Bell* concluded that, where a federal constitutional claim is founded on an alleged misinterpretation of state law, if a petitioner cannot show that the state law was, in fact, misinterpreted, the federal constitutional violation "does not get off the ground." (Doc. No. 9 at 27, quoting *Bell*, 379 F. App'x at 447-48.) In *Bell*, a case involving a defendant's failure to comply with Michigan's alibi notice statute, the court noted:

> A criminal defendant's right to present evidence is not absolute. It may "bow to accommodate other legitimate interests in the criminal trial process." *United States v. Scheffer,* 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998)

(internal quotation marks omitted). In this instance, "[t]he State's interest in the orderly conduct of a criminal trial" "justif[ies] the imposition and enforcement of ... rules relating to the identification and presentation of evidence." *Taylor v. Illinois,* 484 U.S. 400, 411, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). Bell does not offer any federal precedent to the contrary. No constitutional violation occurred.

379 F. App'x at 447-48 (omission in original). A similar situation exists here. Silvey has shown neither that the trial court misinterpreted or misapplied Ohio's alibi notice requirement or any federal precedent that supports any argument that Ohio has no right to enforce its rule.

Petitioner's sixth objection is overruled.

**g.** **Eighth Objection**

Petitioner asserts that "[t]he Magistrate erred in refusing to conduct a Merit Review of the unconstitutional sentence imposed upon Petitioner (R&R at 29)[.]" (Doc. No. 15 at 10.) The Court has already addressed (and rejected) the substance of this objection within the discussion on the fourth objection and, therefore, need not repeat that discussion.

Petitioner's eighth objection is overruled.

**h.** **Ninth Objection**

In his ninth "objection," petitioner "objects to the ultimate conclusion by the Magistrate to Dismiss the Petition with prejudice, for all the reasons set forth herein." (Doc. No. 15 at 11.)

This is not a real objection as it simply summarizes what is already obvious from all the other objections, which the Court has already separately addressed.

Petitioner's ninth objection is overruled.

**III. CONCLUSION**

For the reasons set forth above, having conducted the required *de novo* review, the Court sustains respondent's objection to the R&R and overrules petitioner's objections. The

27

R&R is accepted (with the exception as to its conclusion that Ground Two was not procedurally defaulted) and this case will be dismissed by separate judgment entry.

The Court certifies that an appeal from this decision cannot be taken in good faith and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 1915(a)(3), 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: March 30, 2012

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

28